## UNITED STATES v. AMALGAMATED SUGAR CO. et al.

### No. 39.

Circuit Court of Appeals, Tenth Circuit.
March 5, 1931.

Charles R. Hollingsworth, U. S. Atty., of Salt Lake City, Utah (Seth W. Richardson, Asst. Atty. Gen., and Nat M. Lacy, Sp. Asst.

to Atty. Gen., on the brief), for the United States.

Emmett M. Bagley, of Salt Lake City, Utah (Robert L. Judd and Paul H. Ray, both of Salt Lake City, Utah, and T. H. Devine, of Pueblo, Colo., on the brief), for appellee Amalgamated Sugar Co.

Before LEWIS, COTTERAL, and McDERMOTT, Circuit Judges.

LEWIS, Circuit Judge.

This is an appeal from an order of June 30, 1928 dismissing appellant's amended bill of complaint, brought to recover eighty acres of land in Utah which had been certified to that state by the Secretary of the Interior and the Commissioner of the Land Office under sections 12 and 13 of Act of July 16, 1894 (28 Stats. 110). The amended bill alleged that Godfrey Fuhriman, now deceased, and Ferdinand Zollinger, Jr., with others whose names are unknown to plaintiff, formed a plan to obtain title to certain lands of plaintiff, including the eighty acres here involved, by inducing said state to select the said eighty acres and other lands under said statute by falsely representing that they were non-mineral in character, when they well knew said eighty acres contained valuable mineral deposits, to wit, limestone; that Godfrey Fuhriman on or about April 3, 1903, made and filed with the state of Utah an application to purchase certain lands including the eighty acres, and in support thereof he, at the same time, made a false affidavit therein stating there were not within the limits of said land mineral deposits; that the state in reliance upon the representations made by the said Fuhriman and pursuant to said application did on or about April 10, 1903, file with the Commissioner of the General Land Office its selection list, including among the lands selected by it under said statute for the establishment and maintenance of an institution for the blind as provided in said act, the said eighty acres; and thereafter, on or about October 10, 1903, the Secretary of the Interior approved the selection of said eighty acres, and said eighty acres was on December 3, 1903, certified by the Commissioner to the state of Utah; that in approving and certifying said eighty acres the Secretary and Commissioner relied upon the false statements as to the non-mineral character of said land, and the statements and representations of the state of Utah as to its non-mineral character made by it at the persuasion of the said Fuhriman, believed said statements to be true and were in ignorance of their falsity and were deceived thereby when said approval and certification was made. That Fuhriman then induced the state to issue to him a certificate of purchase of the eighty acres; that in May, 1904, the state issued its patent conveying said land to one Badger who held the title for Fuhriman; that Badger conveyed to Fuhriman and Fuhriman conveyed to a corporation owned and controlled by him and Zollinger, and the corporation on November 13, 1914, conveyed the eighty acres to the Amalgamated Sugar Company, a Utah Corporation, and "that at the time of said conveyance to said defendant, Amalgamated Sugar Company, as aforesaid, and at all times, the said defendant, Amalgamated Sugar Company, well knew the fraudulent manner in which the said land was acquired from the plaintiff as hereinabove alleged"; that the value of the eighty acres is $50,766.00; that during every year since 1905 the defendants had received or taken from the eighty acres limestone to plaintiff's damage of $79,655.00.

The bill prayed that the court decree the certification to the state, so far as it affects the eighty acres, to be null and void, that the eighty acres be decreed free and clear of all claims of defendants and the title thereto revested in plaintiff as of original right and quieted against the claims and pretensions of defendants, that the Sugar Company be divested of its title and enjoined from setting up or claiming any right, interest or title thereto, and from creating any cloud upon plaintiff's title. It is further prayed that the plaintiff recover damages for the value of the limestone taken, but that in the event the court should not decree the title to be revested in plaintiff as of original right and quieted against the claims of defendants, and each of them, that the plaintiff in that event recover damages in addition to the value of the limestone, the value of said eighty acres, to-wit, $50,766.00. The suit was instituted twenty-two years after approval and certification of the eighty acres to the state. The Sugar Company, Zollinger and Fuhriman's administrator were made defendants.

Each defendant moved to dismiss the amended bill on several grounds, some going to the merits, and one that the suit was barred by the statute of limitations: Act March 3, 1891 (26 Stat. 1099, U. S. Code, title 43, § 1166 [43 USCA § 1166]). That Act provides that suits by the United States to vacate and annul any patent shall only be brought within six years after the date of issuance of such patent. The court sustained the several motions on the ground that the statute in bar was applicable, and it ordered

the suit transferred to the law side of the court and gave appellant twenty days within which to conform its pleadings to an action at law. Equity Rule 22 (28 USCA § 723). The plaintiff excepted to this action of the court but complied with the court's order, and filed its complaint on the law side which in substance is a copy of the amended bill, except it only sought recovery of damages for the claimed value of the land, to-wit, $50,-766.00. The Sugar Company filed a demurrer to the complaint on the law side which the court sustained on November 18, 1927.

█ In June of the next year appellant petitioned the court for leave to withdraw its complaint on the law side and to permit it to stand on its amended bill on the equity side. An order was entered granting the request and also dismissing the amended bill to which said motion to dismiss had been sustained on June 30, 1927, but no order of dismissal was then entered. Appellees have moved to dismiss the appeal on the ground that it was not taken in time. It was taken within three months after the order of dismissal on June 30, 1928. No order of dismissal of the amended bill was made until that time. When the court on June 30, 1927, sustained the motion to dismiss on the ground that the suit was barred, it could not dismiss the amended bill and at the same time transfer the suit to the law side. It did the latter. Transference from law to equity (U. S. Code, title 28, § 397 [28 USCA § 397]) is neither a final order nor decision nor an interlocutory order from which an appeal can be taken. Weaver v. Atlas Oil Co. (C. C. A.) 39 F.(2d) 847. In that respect we see no difference when the transfer is made under equity rule.

██ As already said, the complaint on the law side is a copy of the amended bill on the equity side. In the amended bill the appellant prayed for equitable relief, special and general. The complaint on the law side asked for relief at law, damages. Appellees insist that when appellant filed its complaint on the law side and prosecuted that remedy until the court on general demurrer held the complaint bad, it was an election of remedies; that it could not then go back to equity; and that by its procedure in seeking relief at law it elected and was bound to pursue that remedy. But appellant did not of its own choice seek relief at law. Its choice was in equity, and under protest it followed its case from equity to law on the court's order; and when the court ruled against it there, it asked and was granted permission to re-turn to its choice, the equity side. Henderson Tire & Rubber Co. v. Gregory (C. C. A.) 16 F.(2d) 589, 49 A. L. R. 1503. One other point requires consideration. Appellees say the court was right in applying the statutory bar. Counsel for appellant reply that it may be conceded, arguendo, that the limitation statute applies to titles by certification (which they deny), as well as to titles by patent, still the court erred, because the frame of the amended bill entitled appellant to a decree that the Sugar Company took and has held the legal title as trustee ex maleficio for appellant, and the three defendants are liable for the limestone taken. This view, if sustained, renders the plea of limitation of six years in which to sue bad, for the uncancelled certification is no obstacle to the trusteeship which equity imposed when title was taken with notice of the fraud. The opinion in Lockhart v. Leeds, 195 U. S. 427, 25 S. Ct. 76, 49 L. Ed. 263, sustains appellant's contention on the point stated. See also Walden v. Bodley, 14 Pet. 156, 164, 10 L. Ed. 398. The order dismissing the amended bill is reversed. The trial court will vacate that order and require answers.

McDERMOTT, Circuit Judge (concurring).

I concur in the opinion of the Court with serious misgivings. The United States parted with the legal title of the land involved on December 3, 1903. This action was commenced in 1926. The specific prayer is that the certification of 1903 be declared null and void, and that the United States be decreed to be the owner, and that it recover the possession of, the land. There is a prayer for general relief, but no specific prayer that the title be impressed with a trust.

Section 8 of the Act of March 3, 1891 (26 Stat. 1099, 43 USCA § 1166 provides that "suits by the United States to vacate and annul any patent * * * hereafter issued shall only be brought within six years after the date of the issuance of such patents." The avowed purpose of this statute, as disclosed by its legislative history, was to give stability to land titles and to encourage settlement of public lands. The statute applies although the patent was procured by fraud. United States v. Winona, etc., R. Co., 165 U. S. 463, 476, 17 S. Ct. 368, 41 L. Ed. 789. If this statute is to serve the purpose for which it was passed, it would seem that it should not be circumvented by asking for the same relief in a different form of action. And the Supreme Court has so held. In United States v. Chandler-Dunbar

Co., 209 U. S. 447, 450, 28 S. Ct. 579, 580, 52 L. Ed. 881, the United States filed a bill to remove a cloud from its title to certain lands. The defendant relied upon this statute. The government replied that the action was not one to vacate and annul a patent, but to quiet title. The defendant prevailed, the court holding that—

"In form the statute only bars suits to annul the patent. But statutes of limitation, with regard to land, at least, which cannot escape from the jurisdiction, generally are held to affect the right, even if in terms only directed against the remedy. Leffingwell v. Warren, 2 Black 599, 605, 17 L. Ed. 261, 263; Sharon v. Tucker, 144 U. S. 533, 12 S. Ct. 720, 36 L. Ed. 532; Davis v. Mills, 194 U. S. 451, 457, 24 S. Ct. 692, 48 L. Ed. 1067, 1071. This statute must be taken to mean that the patent is to be held good, and is to have the same effect against the United States that it would have had if it had been valid in the first place. See United States v. Winona & St. Peter R. R. Co., 165 U. S. 463, 476, 17 S. Ct. 368, 41 L. Ed. 789, 795."

This reasoning seems to me to be sound. I have difficulty in reconciling myself to the proposition that if, by reason of the statute, the government may not bring suit to annul its patent, it may nevertheless recover the land by impressing a trust on the title. True, the latter action saves the rights of bona fide purchasers; but those generally are saved by other sections of the statute. The situation is aggravated when, as in the case at bar, the form of the action is one to vacate the certification.

If it be assumed that the statute applies to certifications as well as patents (a question that has not been ruled by this Court), the conclusion that a suit to recover the lands may be maintained, notwithstanding the statute, is justified by two decisions of the Supreme Court. In Lockhart v. Leeds, 195 U. S. 427, 436, 25 S. Ct. 76, 49 L. Ed. 263, cited by Judge Lewis, it was held that a trust might be impressed upon land, notwithstanding there was no specific prayer therefor, and although such relief is at variance with the theory disclosed by the specific prayer of the bill. It is proper, therefore, to treat this bill as one seeking to impress a trust upon real estate. While the Amalgamated Sugar Company is entitled, as a constructive trustee, to the benefit of any statute of limitations, the Supreme Court has held, in United States v. New Orleans Pac. Ry. Co., 248 U. S. 507, 39 S. Ct. 175, 178, 63 L. Ed. 388, that a statute similar to the one in question does not bar an action to impress a trust. That was an action by the United States to recover certain lands for the benefit of certain homestead claimants. The prayer was to cancel the patents or declare a trust. The Supreme Court disposed of the statute of limitations by holding:

"As the patents were issued before, and the suits were brought more than five years after, the Act of March 2, 1896, c. 39, 29 Stat. 42 [43 USCA §§ 900–902], the prayer that the patents be canceled must be put out of view, and the alternative prayer—that the title under the patents be declared to be held in trust for the homestead claimants and the trust enforced—must be regarded as if standing alone."

It is suggested that Independent Coal & Coke Co. v. United States, 274 U. S. 640, 47 S. Ct. 714, 71 L. Ed. 1270, is to the same effect. But in that case the United States had been decreed to be the owner of the lands in an action brought within the statutory period, and the latter suit was in aid of the earlier decree. But the case of United States v. New Orleans Pac. Ry. Co., supra, is analogous on the facts, and the decision is clear-cut. While the result seems to be to enable the government to escape the statutory bar in all cases except where a bona fide purchaser is involved, and to disturb the repose sought by the statute, I feel that the two Supreme Court cases cited are determinative, and therefore concur.