Richard D. EKSTROM, et al., Appellants,

v.

VALUE HEALTH, INC., Appellee.

No. 94–7171.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 22, 1995.

Decided Oct. 31, 1995.

Natalie C. Moritz, Pittsburgh, PA, pro hac vice, argued the cause, for appellants. Vincent J. Curtis, Jr., Rosslyn, VA, was on the briefs, for appellants. Debra B. Todd, Pittsburgh, PA, pro hac vice, entered an appearance, for appellants.

Daniel L. FitzMaurice, Hartford, CT, argued the cause, for appellee, with whom Michael C. Poliner, Washington, DC, was on the brief. George Miron, Washington, DC, entered an appearance, for appellee.

Before: EDWARDS, Chief Judge, and WALD and RANDOLPH, Circuit Judges.

HARRY T. EDWARDS, Chief Judge:

The instant dispute arose from a disagreement over the terms of a merger agreement between two health care management companies. In their merger agreement, the parties provided that any dispute over the terms of the agreement would be resolved pursuant to binding arbitration. Such a dispute did in fact arise and was submitted to arbitration, the result of which proved unsatisfactory to appellants. Subsequently, appellants petitioned the United States District Court for the District of Columbia to vacate the arbitration award. The District Court dismissed the petition for lack of subject matter juris-

diction on the ground that appellants had failed to seek review within 30 days of the arbitration award as required by Connecticut law. Appellants argue that, although Connecticut law governs the substantive terms of the merger agreement, the three-month limitation period prescribed by the Federal Arbitration Act, 9 U.S.C. § 12 (1994) ("FAA"), controls the timeliness of petitions to vacate arbitration awards. Under this view of the law, appellants claim that their petition to vacate was timely.

 We affirm the judgment of the District Court, finding no merit in appellants' arguments. In their amended merger agreement, the parties provided that the agreement would be governed by and construed in accordance with the laws of Connecticut. Under Connecticut law, which we find controlling, it is clear that a petition to vacate an arbitration award must be filed within thirty days. This is a jurisdictional limitation, not subject to waiver, and it is therefore viewed as substantive, not procedural. Because the FAA does not prevent the enforcement of agreements to arbitrate under different rules than those stated in the Act itself, the FAA's 90-day limitation period does not preempt the shorter period prescribed by Connecticut law. The District Court therefore properly dismissed appellant's suit.

## I. BACKGROUND

The essential facts are undisputed. Appellants are Pennsylvania residents and former shareholders of a Pennsylvania company that was acquired by appellee Value Health, Inc. ("Value Health"), a Delaware corporation whose principal place of business is in Connecticut. Value Health acquired appellants' stock pursuant to an Agreement and Plan of Merger Dated November 4, 1991 ("Merger Agreement"). The "Governing Law" section of the Merger Agreement provided:

> This Agreement shall be governed by and construed in accordance with the internal laws of the State of Connecticut, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof, except that the provisions of Sections 8.12, 8.13, 8.14, 8.15 and 8.16 shall be governed by and construed in

accordance with the internal laws of the Commonwealth of Pennsylvania.

Merger Agreement § 8.04, Ex. A to Aff. of Jonathan B. Tropp ("Tropp Aff."), appended to appellee's Motion to Dismiss. The Merger Agreement required Value Health to pay appellants with shares of its stock based on two estimates of "Minimum Merger Consideration." In April 1993, having failed to reach agreement with Value Health on a second estimate, appellants demanded arbitration pursuant to the First Amendment to the Merger Agreement, which provided:

> In the event that [the parties] have not agreed on the Minimum Merger Consideration ... [either party may] refer the issue ... to be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Such arbitration proceedings shall be held before a panel of three arbitrators in Washington, D.C. In making their decision the arbitrators shall apply the provisions of the Merger Agreement as amended and supplemented by this Agreement....

First Amendment to Agreement and Plan of Merger ("Amendment") ¶ 7, Tropp Aff. Ex. B, appended to appellee's Motion to Dismiss. The Amendment did not contain a choice-of-law clause, but provided that, except as amended, the terms of the Merger Agreement were to remain in effect. *Id.* ¶ 13.

In early 1994, a panel of arbitrators designated by the Washington, D.C. office of the American Arbitration Association ("AAA") rendered an award in favor of Value Health. Subsequently, after expiration of the 30–day limitation period under Connecticut law, CONN.GEN.STAT.ANN. § 52–420(b) (West 1991), but within the FAA's three-month limitation period, 9 U.S.C. § 12 (1994), appellants petitioned the District Court to vacate the arbitration award.

 Value Health moved to dismiss for lack of subject matter jurisdiction. The District Court granted the motion, holding that, under the Merger Agreement, Connecticut's 30–day time limit governed, and that the FAA's three-month limitation did not preempt it. *Ekstrom v. Value Health, Inc.,*

Civ. Action No. 94–0603, (D.D.C. July 26, 1994) ("First Order"), *reprinted in* Joint Appendix ("J.A.") 110. Appellants first moved for reconsideration, and then filed a notice of appeal. On December 21, 1994, the District Court denied appellants' motion to reconsider, *Ekstrom v. Value Health, Inc.,* Civ. Action No. 94–0603, (D.D.C. Dec. 21, 1994) ("Second Order"), *reprinted in* J.A. 165, and the notice of appeal became effective.[1] FED.R.APP.P. 4(a)(4).

## II. ANALYSIS

■ Our review in this case is *de novo* because the only judgments in issue involve questions of law. *See Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1220, 113 L.Ed.2d 190 (1991). As an initial matter, we must determine whether to enforce the parties' contractual choice of law. Then, we must decide whether, under the Merger Agreement, the parties intended to be bound by Connecticut law with respect to the timeliness of petitions to vacate arbitration awards. Related to this latter issue is appellant's claim that the FAA's limitations period takes precedence over Connecticut law.

### A. *Choice of Law*

■ In diversity cases such as this, we look "to the District of Columbia for the applicable choice of law principles." *Gray v. American Express Co.,* 743 F.2d 10, 16 (D.C.Cir.1984). The District of Columbia Court of Appeals has adopted the general rule "that parties to a contract may specify the law they wish to govern, as part of their freedom to contract, as long as there is some reasonable relationship with the state specified." *Norris v. Norris,* 419 A.2d 982, 984 (D.C.1980).

■ Here, the parties agree that Connecticut's substantive law on contracts and arbitrability should govern the amended Merger Agreement, except in those few instances where the agreement makes it clear that Pennsylvania law controls.[2] The parties are in no way connected to the District of Columbia, except for their contractual arrangement to use the Washington, D.C. office of the American Arbitration Association to administer actions in arbitration. Moreover, neither party argues that the Merger Agreement should be governed or construed pursuant to the laws of the District of Columbia or Delaware. The parties have an undisputed connection to Connecticut, because Value Health, the surviving entity in the merger, operates principally in Connecticut. That the parties specifically carved out five subsections to which to apply Pennsylvania law only serves to underscore their stated intent to apply Connecticut law to the rest of the Merger Agreement. On the basis of this record, and in light of the controlling choice of law principles under District of Columbia law, we are constrained to enforce the parties' choice of Connecticut law to govern the disputed terms of the Merger Agreement at issue in this case.

### B. *The Meaning of the Disputed Terms of the Contract*

Although appellants generally do not doubt the applicability of Connecticut law, they argue that they did not agree to apply Connecticut law to determine the timeliness of petitions to vacate arbitration awards. Appellants claim that, in selecting the AAA to administer arbitration proceedings, the parties evinced an intention to select a "neutral forum." However, it does not follow from this that the parties also intended to avoid Connecticut law. AAA rules provide for many details of procedure not covered in

---

1. Appellants did not amend the notice of appeal in light of the Second Order. Federal Rule of Appellate Procedure 4(a)(4) requires such an amendment only for an appeal challenging "an alteration or amendment of the judgment." FED. R.APP.P. 4(a)(4). Value Health argued in its brief that appellants' failure to appeal the Second Order mooted their appeal from the First Order. At oral argument Value Health wisely withdrew this argument. We agree that, because the Sec-

ond Order did not alter the judgment of the First Order, appellants' original notice of appeal is adequate to bring all of the issues before this court.

2. Those Sections (§§ 8.12–8.16) concern non-competition, confidentiality, non-solicitation of employees or customers, and injunctive relief and enforceability regarding those provisions.

Connecticut's arbitration law. *See generally* AMERICAN ARBITRATION ASS'N, COMMERCIAL ARBITRATION RULES (1993); CONN.GEN.STAT. ANN. §§ 52–408—52–424 (West 1991). Moreover, the AAA rules do not purport to establish the time period within which a party may petition a court for judicial review of an arbitration award. In short, the parties' selection of the AAA to administer arbitration proceedings arising under the Merger Agreement in no way alters the provisions setting forth their understanding on the choice of law to govern and construe the agreement.

In a vain attempt to bolster their argument, appellants also note that neither the choice of law provisions nor the arbitration clause contains an *express* agreement to apply the 30–day Connecticut time limit. On this point, appellants contend that the "[c]hoice of law provisions in contracts are generally understood to incorporate only substantive law, not procedural law such as statutes of limitation.... Absent an express statement of intent, a standard choice of law provision such as this one will not be interpreted as covering a statute of limitation." *Federal Deposit Ins. Corp. v. Petersen,* 770 F.2d 141, 142–43 (10th Cir.1985). Value Health responds that, while this may be true in some cases, the Connecticut limitation period is "substantive" and, therefore, does not require express incorporation. We agree.

 Under Connecticut law, "time limits" may be either "substantive" or "procedural," and jurisdictional time limits are not subject to waiver and are thus considered substantive. *Lo Sacco v. Young,* 210 Conn. 503, 555 A.2d 986, 988 (1989). Under Connecticut law, a statute of limitation is "substantive" when it applies to a right created by statute, as opposed to a right recognized at common law, and substantive limitation periods apply in any forum in which the right is sought to be enforced. *Baxter v. Sturm, Ruger & Co.,* 230 Conn. 335, 644 A.2d 1297, 1299, 1302 (1994). The 30–day Connecticut limitations period is considered to be part of the statute granting the right to challenge an arbitration award, and, therefore, it "'was directed to the newly created liability so specifically as to warrant saying that it qualified the right.'" *Thomas Iron Co. v. En-*

*sign–Bickford Co.,* 131 Conn. 665, 42 A.2d 145, 147 (1945) (quoting *Davis v. Mills,* 194 U.S. 451, 454, 24 S.Ct. 692, 694, 48 L.Ed. 1067 (1904)).

 Thus, the Connecticut statute of limitations for petitions to vacate arbitration awards is jurisdictional, not subject to waiver, and, accordingly, substantive. *See Middlesex Ins. Co. v. Castellano,* 225 Conn. 339, 623 A.2d 55, 58 (1993) ("If [a motion to vacate an arbitration award] is not filed within the thirty day time limit [of section 52–420(b) of the Connecticut Code], the trial court does not have subject matter jurisdiction over the motion."). Accordingly, appellants' petition to vacate the arbitration award was untimely under Connecticut law, and thus untimely under the Merger Agreement as well.

### C. *Preemption*

 Finally, appellants contend that, even acknowledging that the Merger Agreement embraces Connecticut law, the state's limitation period should not apply to the case at hand because it has been preempted by the FAA. We disagree.

The Supreme Court has noted that the "FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 477, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Id.* at 478, 109 S.Ct. at 1255. State law may "be pre-empted to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 477, 109 S.Ct. at 1255 (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). However,

it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself.... [P]arties are generally free to structure their arbitration agreements as they see fit. Just as they may

limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted.

*Id.* at 479, 109 S.Ct. at 1255–56 (citation omitted).

The FAA has been seen to preempt state law where it conflicted with "the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms." *Id.*; *see also Perry v. Thomas,* 482 U.S. 483, 490–91, 107 S.Ct. 2520, 2525–26, 96 L.Ed.2d 426 (1987) (FAA preempted state law that made agreements to arbitrate wage collection claims unenforceable.); *Southland Corp. v. Keating,* 465 U.S. 1, 16, 104 S.Ct. 852, 861, 79 L.Ed.2d 1 (1984) (FAA preempted state law that made agreements to arbitrate franchise claims unenforceable.). However, here, as in *Volt,* where "the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward." 489 U.S. at 479, 109 S.Ct. at 1256, *see also Fahnestock & Co. v. Waltman,* 935 F.2d 512, 517 (2d Cir.) (FAA does not preempt New York common law rule prohibiting punitive damages in arbitration award.), *cert. denied,* 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991), *and cert. denied,* 502 U.S. 1120, 112 S.Ct. 1241, 117 L.Ed.2d 474 (1992).

Appellants argue that Connecticut's arbitration law must yield because it actually conflicts with the FAA. However, at oral argument appellants conceded that, under *Volt,* if the Merger Agreement had *explicitly* called for the application of Connecticut's 30–day limitation period, such a provision would trump the FAA's three-month period. We can discern no material difference between such a hypothetical provision and the actual one in the parties' Merger Agreement calling for the application of Connecticut law. Once it is determined that "Connecticut law" imposes a 30–day limitation period, there can be no doubt that the parties agreed to be bound by it. The main point is that Connecticut law surely does not conflict with the FAA's "primary purpose." As the District Court recognized, applying Connecticut law here actually promotes the FAA's primary goal by enforcing the parties' contract to arbitrate according to its terms.

III. CONCLUSION

For the reasons heretofore indicated, the judgment of the District Court is affirmed.

*So ordered.*